ATTORNEY GENERAL OF TEXAS

GREG ABBOTT

September 13, 2010

The Honorable Allan B. Ritter
Chair, Committee on Natural Resources
Texas House of Representatives
Post Office Box 2910
Austin, Texas 78768-2910

Opinion No. GA-0796

Re: Whether the conflict of interest provisions of chapter 171, Local Government Code, required two board members of the Uvalde County Underground Water Conservation District to disclose their respective interests and abstain from voting on a District rule (RQ-0853-GA)

Dear Representative Ritter:

The Uvalde County Underground Water Conservation District (the "District") is a groundwater conservation district subject to chapter 36 of the Water Code and governed by an eight-member board of directors (the "Board").[1] Members of the Board are subject to chapter 171 of the Local Government Code. Request Letter at 1; TEX. WATER CODE ANN. § 36.058 (West 2008). Chapter 171, which generally governs pecuniary conflicts of interest, requires a local public official to disclose the official's interest in a business entity or real property and abstain from participating in a vote or decision involving that entity or real property under certain circumstances. *See* TEX. LOC. GOV'T CODE ANN. §§ 171.002–.004, .007(a) (West 2008). Because members of the public have raised the issue, you ask whether chapter 171 required two Board members to file affidavits disclosing their respective interests in a business entity and real property and abstain from voting to approve a District rule under the particular facts presented. *See* Request Letter at 4–5.

I.    Facts Presented

The facts, as you present them, are as follows: In February 2009, a proposed revision to a District rule sought to codify the District's interpretation of its existing 2002 rule regarding groundwater production. *See* Request Letter at 1–2. The proposed revision permitted water withdrawal from a well or well system used for irrigation purposes at a maximum of "two and one half . . . acre feet[2] per irrigated acre per year, regardless of which formation or aquifer is the source of the groundwater" taking into "account any groundwater withdrawal rights granted by any

---

[1]Request Letter at 1, 2 n.1 (*available at* http://www.texasattorneygeneral.gov); *see also* Act of May 30, 1993, 73rd Leg., R.S., ch. 626, art. 2, 1993 Tex. Gen. Laws 2350, 2370 (validating District's creation, boundaries, and powers).

[2]"An acre-foot is the amount of water that would cover an acre of land to one foot, approximately 325,850 gallons." *Barshop v. Medina Cnty. Underground Water Conservation Dist.*, 925 S.W.2d 618, 624 n.1 (Tex. 1996).

permitting authority associated with the tract, regardless of whether those rights have been conveyed." *Id.* (footnote added). "The context and rationale for the proposed rule related to a prior decision of the Board on three pending applications [(the "Applications")] for . . . permits from the District." *Id.* at 2. These applicants "already held groundwater irrigation rights from the Edwards Aquifer Authority [for two acre feet per acre] to irrigate the same tract of land for which they were seeking irrigation withdrawal rights from the District [for two-and-a-half acre feet per acre]." *Id.* In accordance with the District's interpretation of its 2002 rule "as limiting groundwater production rights to 2.5 acre feet cumulative, regardless of the aquifer from which the water was withdrawn or the permitting authority," the District denied the applicants any allocation in excess of two-and-a-half acre feet of water per acre. *Id.*

In March 2009, the Board voted to delete the proposed limiting language requiring that the two-and-a-half acre feet per acre be cumulative of withdrawal permits granted with respect to another aquifer and by another permitting authority. *See id.* You tell us that "Board Member A made the motion to amend the rule prior to adoption and Board [member] B seconded the motion." *Id.* at 3. The more expansive version of the rule (the "Rule") allowing cumulative withdrawal to exceed two-and-one-half acre feet passed, with four Board members (including Board members A and B) voting for and three against it. *See id.* at 2. When the Board took this March 2009 action, a motion for a rehearing was pending on the three Applications. *Id.* at 3. Following adoption of the Rule, the Board granted the motion for rehearing, reversed its prior decision, and granted the applicants the full water allocation they had requested, "so that applicants would now hold 4.5 acre feet per year of irrigation water rights instead of being limited to 2.5 acre feet under the prior ruling." *Id.* With respect to consideration of the Applications, you tell us, "Board member A had filed an affidavit disclosing his business interest in one of the applicants" (the "Applicant") and "abstained from participating in the consideration or deliberations on the applications." *Id.* You do not raise any issues with respect to the Board's consideration of the Applications.

## II.    Chapter 171

With this factual context, we look at the relevant provisions of chapter 171 of the Local Government Code. Under section 171.004, a local public official must disclose a "substantial interest" in a business entity or real property prior to a vote or decision involving the business entity or real property and abstain from further participation in the matter if:

> (1)  in the case of a substantial interest in a business entity the action on the matter will have a special economic effect on the business entity that is distinguishable from the effect on the public; or
>
> (2)  in the case of a substantial interest in real property, it is reasonably foreseeable that an action on the matter will have a special economic effect on the value of the property, distinguishable from its effect on the public.

TEX. LOC. GOV'T CODE ANN. § 171.004(a) (West 2008). *But see id.* § 171.004(c) (providing that a local official who files an affidavit is not required to abstain "if a majority of the members of the governmental entity . . . is composed of persons who are likewise required to file and who do file affidavits of similar interests"). Section 171.003 makes it an offense for a public official to knowingly violate section 171.004. *See id.* § 171.003(a)(1). In addition to the criminal penalty, an action taken in violation of section 171.004, among others in chapter 171, renders the action voidable if "the measure that was the subject of an action involving a conflict of interest would not have passed the governing body without the vote of the person who violated the" provision. *Id.* § 171.006.

## III.    Analysis

Based on the facts presented,[3] Board members A and B each have the requisite "substantial interest" for the purposes of section 171.004. *See id.* § 171.002 (defining "substantial interest"). Board member A, you inform us, has a substantial interest in a business entity because "he is an employee of one of the two partners who are the applicants" for water permits and "derives more than 10% of his gross income from that employment." Request Letter at 3; TEX. LOC. GOV'T CODE ANN. § 171.002(a)(2) (West 2008) (providing that "a person has a substantial interest in a business entity if . . . funds received by the person from the business entity exceed 10 percent of the person's gross income for the previous year"); *id.* § 171.001(2) (defining "Business entity" to "mean[] a sole proprietorship, partnership . . . or any other entity recognized by law"). Board member B, you tell us, has a substantial interest in real property because he owns land in the District valued at over $2,500. *See* Request Letter at 3–4; TEX. LOC. GOV'T CODE ANN. § 171.002(b) (West 2008) ("A person has a substantial interest in real property if the interest is an equitable or legal ownership with a fair market value of $2,500 or more."). That Board members A and B have substantial interests in the business entity and in the real property at issue is not, based on the facts presented, in dispute. *See* Request Letter at 3–4. Accordingly, we assume for the purposes of this opinion that each member has the requisite substantial interest for the purposes of chapter 171.

As your questions indicate, the issue here is the participation of Board members A and B in the March 2009 vote on the Rule and whether that action had a "special economic effect." *See* Request Letter at 4–5.[4] With respect to Board member A, the test under section 171.004 is whether

---

[3]In answering the question posed, we rely on the factual representations of the requestor. *See* Tex. Att'y Gen. Op. Nos. GA-0760 (2010) at 1 n.2, GA-0544 (2007) at 3 n.3, GA-0457 (2006) at 2 n.2, GA-0249 (2004) at 2.

[4]You specifically ask:

> 1) With respect to Board Member A, under the facts presented did the Board's action on Rule 12.2(a)(1) affect his substantial interests in a business entity in a manner that is distinguishable from the rule's effect on the general public and thus require disclosure and abstention under § 171.004, Local Government Code?

> 2) With respect to Board Member B, under the facts presented did the Board's action on Rule 12.2(a)(1) affect his substantial interests in real property in a manner

(continued...)

his vote on the Rule would have had "a special economic effect on the business entity," i.e., the Applicant in which he has a substantial interest, "distinguishable from the effect on the public." TEX. LOC. GOV'T CODE ANN. § 171.004(a)(1) (West 2008). With respect to Board member B, the test is whether it was "reasonably foreseeable" that his vote on the Rule would have a special economic effect on the value of his real property in which he has a substantial interest distinguishable from the effect on the public. *Id.* § 171.004(a)(2).

Generally, this office "cannot decide in the opinion process whether a governmental entity's action will have a special economic effect on a business entity or the value of real property distinguishable from its effect on the public, because this decision requires the investigation and resolution of fact questions." Tex. Att'y Gen. Op. No. GA-0337 (2005) at 5. This office has answered the question as a matter of law based on the facts provided only in the context of the purchase or sale of goods or services. For instance, this office determined that if a governmental entity considers purchasing goods or services from a business entity in which a local public official has a substantial interest, "the decision will, as a matter of law, 'have a special economic effect on the [business] that is distinguishable from the effect on the public.'" Tex. Att'y Gen. Op. No. GA-0136 (2004) at 3 (concluding that a business entity in which a county judge owns a substantial interest may sell fuel or oil products to the county only if the judge has filed an affidavit and abstains from participating in a deliberation or vote on the matter); *see* Tex. Att'y Gen. Op. No. DM-279 (1993) at 7 (determining that a county's decision to buy materials from a corporation in which a commissioner has a substantial interest will, as a matter of law, have a special economic effect on the corporation); *see also Walk v. State*, 841 S.W.2d 430, 435 (Tex. App.—Corpus Christi 1992, pet. ref'd) (concluding there was sufficient evidence to support a county judge's conviction for knowing participation in a decision to purchase office supplies from his son-in-law's store). Based on case law, the question could also be answered as a matter of law, depending on the facts provided, in the context of the purchase or sale of an interest in real property. *See Dallas Cnty. Flood Control Dist. No. 1 v. Cross*, 815 S.W.2d 271, 281–82 (Tex. App.—Dallas 1991, writ denied) (concluding there was sufficient evidence to establish substantial interest to void purchase by flood control district of easement across district's former president's land approved by board members who had such interest in the president's affairs).

Instead of the purchase of (1) goods or services or (2) a real property interest the effect of which can be more readily determined as a matter of law, we are confronted here with the effect of the adoption of a rule on a business entity and on the value of real property. You tell us that following the March 2009 Board action, the District granted the pending motion for rehearing of the business entity in which Board member A has a substantial interest, i.e., the Applicant, and awarded

---

[4](...continued)
> that is distinguishable from the rule's effect on the general public and thus require disclosure and abstention under § 171.004, Local Government Code?
>
> 3) With respect to Board Member B, are the facts and circumstances described in Attorney General Opinion DM-130 sufficiently met so as to bar Board Member B's action on Rule 12.2(a)(1)?

Request Letter at 4.

permits for the maximum two-and-a-half acre feet of water per acre in addition to the two acre feet per acre granted by the Edwards Aquifer Authority ("EAA") for a total of four-and-a-half acre feet per acre. *See* Request Letter at 3. It is suggested that the four-and-a-half acre feet per acre water request would not, or could not, have been granted under the District's interpretation of the pre-2009 rule. *See id.* at 2. Thus, with respect to Board member A, members of the public have alleged that the March 2009 "modification to the proposed rule paved the way for the Board's initial decision to be reversed and the permits to be granted [to the business entity in which Board Member A has a substantial interest] as requested on rehearing." *Id.* at 3.[5] With respect to Board member B, members of the public have alleged that because he owns land in Uvalde County and holds permits issued by the EAA and the District, the March 2009 action "would allow him up to 4.5 acre feet of water per acre, not the 2.5 acre feet had the February . . . version [of the rule] been adopted." *Id.* at 4.

Neither section 171.004 nor a court decision that we find provides guidance in regard to the adoption of a rule. In Attorney General Opinion GA-0337, which addressed the general regulatory authority of a water district, our office observed "that it seems unlikely that a broadly applicable [conservation and reclamation district] action would have a 'special economic effect' on a particular business entity distinguishable from its effect on the general public if its only effect on the business entity is generally to encourage (or to limit) property development within the [d]istrict's boundaries." Tex. Att'y Gen. Op. No. GA-0337 (2005) at 6 (considering whether a district's general regulatory authority would have a "special economic effect" on business entities in which board members have substantial interests). In the absence of legislative or judicial guidance, this observation articulates a practical and reasonable standard—that regulatory actions broadly applicable to, or generally effecting, persons or property in a water district will ordinarily not have a "special economic effect" on a particular business entity as to invoke the disclosure and abstention requirements of chapter 171.

However, based on the facts provided, it is not clear that the Board's March 2009 action was broadly applicable. Nor is it clear that its effect on the business entity (in which Board member A has a substantial interest) and on the real property (in which Board member B has a substantial interest) is one shared generally by other property owners in the District. In other words, it is not clear that the Board's adoption of the Rule is the type of regulation with general application or effect that, under the Attorney General Opinion GA-0337 standard, *fails* as a matter of law to trigger the filing and abstention requirements of section 171.004(a).

First, the March 2009 Board action arguably affected a limited class of real property and real property owners—those subject to permitting by both the District and the EAA—that specifically included the property owned or held by the business entity in which Board member A has a substantial interest and the property owned by Board member B. *See* Request Letter at 2 (stating that applicants for water permits from the District already hold permits from the EAA for irrigating the same tracts); *id.* at 3–4 (stating that "Board member B owns a substantial parcel of land in Uvalde County underlain by the Buda, Austin Chalk, and the Edwards Aquifers" and that "[t]here are not

---

[5]You do not ask and we do not consider the Board's authority to grant the permits pursuant to the rule as revised in March 2009. *See, e.g.,* TEX. LOC. GOV'T CODE ANN. § 245.002(a) (West 2005) (providing that regulations in effect at the time of filing of original applications for permits govern approval or disapproval by each regulatory agency).

a large number of landowners within the District who own land with these particular geological/hydrological features").[6]   Attorney General Opinion DM-130 suggests that regulatory actions affecting a limited class of real property and their owners, in certain circumstances, can have a "special economic effect."   Tex. Att'y Gen. Op. No. DM-130 (1992) at 2 ( "[S]ection 171.004 would, in certain circumstances, bar a city council member's voting on a zoning matter affecting territory in which the member's residence is located.").   Here, while we are informed that the class of property and owners affected by the Board's adoption of the Rule is limited, we do not know the exact numbers.   Second, the link between the March 2009 action and its particular economic effect on the business entity in which Board member A has a substantial interest and on Board member B's real property was, arguably, direct and apparent at the time of the action.   The special economic effect of the March 2009 action on the business entity and the value of the described property was reasonably foreseeable when the Board voted to adopt a rule that would allow such property owners and property more water access.   *Cf. Cross*, 815 S.W.2d at 278 (stating that board members "knew the nature of the motion [to purchase an easement from former president] on which they voted, and could reasonably foresee that [the former president] would receive an economic benefit from the District paying him $1.2 million").

In sum, based on the facts presented, a court *could* find that the March 2009 action had a special economic effect on the business entity in which Board member A has a substantial interest, that was distinguishable from the effect on the public, and on the value of Board member B's real property, which was reasonably foreseeable at that time.   Given the inherently factual nature of the inquiry and absence of judicial precedent, we cannot conclude that a court *would* find that the March 2009 action had a special economic effect or that it was reasonably foreseeable that it would have such an effect as to require Board members A and B to file affidavits disclosing their interests and abstain from participating in the March 2009 vote.

---

[6]*See also* Brief from Thomas Farr, at 1–2 (Feb. 24, 2010) (stating that "[a] very small portion of Uvalde County is underlain simultaneously by 3 karst aquifers, the Edwards Limestone, managed by the [EAA] and the Buda and Austin Chalk Limestone, managed by the [District]") (on file with the Opinion Committee).

## S U M M A R Y

Chapter 171 of the Local Government Code generally governs a local public official's pecuniary conflicts of interest. Section 171.004 requires a local public official to file an affidavit disclosing the official's interest in a business entity or real property and abstain from participating in a vote or decision involving that entity or real property when the vote or decision will have a special economic effect on the business entity or the value of the real property.

In March 2009, the board of directors (the "Board") of the Uvalde County Underground Water Conservation District (the "District") voted to approve a District rule permitting withdrawal of groundwater for agricultural use without certain limitations previously proposed. Based on the facts presented, a court *could* find that the March 2009 action had a special economic effect on an applicant for a water permit in which a Board member has a substantial interest and on the value of real property owned by another Board member, which was reasonably foreseeable. Given the inherently factual nature of the inquiry and absence of judicial precedent, this office cannot conclude that a court *would* find that the March 2009 action had a special economic effect, or that it was reasonably foreseeable that the action would have such an effect as to require the two Board members to file affidavits disclosing their interests and abstain from participating in the March 2009 vote.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

DAVID J. SCHENCK
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Sheela Rai
Assistant Attorney General, Opinion Committee